IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JESSICA LAURA KLEBOE,           )
                                )
            Plaintiff,           )
                                )
    v.                           )      1:14CV914
                                )
CARYOLYN COLVIN,                 )
Acting Commissioner of Social    )
Security,                        )
                                )
            Defendant.           )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Jessica L. Kleboe, seeks review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and supplemental security income benefits ("SSI"). The Court has before it the certified administrative record and cross-motions for judgment. (Docket Entries 6, 9, 12.) For the reasons set forth below, the Court recommends that Plaintiff's motion (Docket Entry 9) be denied, the Defendant's motion (Docket Entry 12) be granted, and that the final decision of the Commissioner be upheld.

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI on October 24, 2011, alleging a disability onset date of October 24, 2011. (Tr. 163–69.)[1] Her application was denied initially (Tr. 110–113) and upon reconsideration (Tr. 117–121.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. 20–21.) Plaintiff, her attorney, and an impartial

---

[1] Transcript citations refer to the administrative record which was filed with Defendant's Answer. (Docket Entry 6.)

1

vocational expert appeared at the hearing on May 22, 2013. (Tr. 41–82.) A decision was issued on July 19, 2013, upholding the denial of Plaintiff's application for SSI. (Tr. 26–36.) On August 22, 2014, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's determination the Defendant's final decision for purposes of judicial review. (Tr. 7–9.)

## II. STANDARD FOR REVIEW

Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam), *superseded in nonrelevant part by* 20 C.F.R. § 404.1517(d)(2); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence or the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*,

2

907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## III. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[3] that exists in the national economy. *Id.* § 1382c(a)(3)(B).

### A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).
[3] "Substantial gainful activity" is work that (1) involves performing "significant and productive physical or mental duties," and (2) "is done (or intended) for pay or profit." 20 C.F.R. § 416.910.

3

claimant is disabled, which is set forth in 20 C.F.R. § 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.
(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.
(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.
(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.
(5) Whether the claimant is able to perform any other work considering both his residual functional capacity[4] and his vocational abilities. If so, the claimant is not disabled.

20 C.F.R. § 416.920.

In rendering his disability determination, the ALJ made the following findings later adopted by Defendant:

(1) The claimant has not engaged in substantial gainful activity since October 14, 2011 (20 CFR 416.971, *et seq.*).
(2) The claimant has the following severe impairment: bipolar disorder with psychotic features (20 CFR 416.920(c)).
....

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
....

---

[4] "Residual functional capacity" ["RFC"] is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. § 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

4

(4) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of work at all exertional levels, but with the following non-exertional limitations: she is capable of performing simple, routine, repetitive tasks, while maintaining attention, concentration, persistence or pace to stay on tasks for periods of 2 hours at a time during a typical 8-hour workday, as required to perform such tasks, in a low stress work setting, which is further defined as no production-pace or quota-based work, rather she requires a goal-oriented job primarily dealing with things as opposed to people, with no more than occasional changes in the work setting; with no more than occasional interpersonal interaction with supervisors and/or co-workers, but she must avoid direct work with members of the public as a component of the job, such as sales or negotiations, though incidental or casual contact as it might arise during the workday is not precluded; she is limited to no more than occasional decision-making as a component of the job; and she is restricted to jobs that carry a reasoning level of 1 or 2.

. . . .

(5) The claimant is unable to perform any of her past relevant work (20 CFR 416.965).

(Tr. 28–34) (footnote omitted). Additionally, the ALJ found that Plaintiff, who was 41 years old at the time of her application, met the definition of a "younger individual aged 18–49." (Tr. 34.) The ALJ also noted that Plaintiff had a high school education and was able to communicate in English, and that transferability of job skills was not an issue in the case. (Tr. 34.) Based on these factors, Plaintiff's RFC, and the vocational expert's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 35) (citing 20 C.F.R. §§ 416.969 and 416.969(a)). Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Social Security Act (the "Act"), at any time between October 14, 2011 (both the application and alleged onset date) and July 19, 2013, the date of the decision. (Tr. 36.)

## IV. ANALYSIS

Plaintiff contends that the Commissioner erred in determining that she was not disabled for purposes of the Act. Plaintiff raises two issues: (1) the ALJ conducted a flawed RFC assessment by giving less than controlling weight to the opinion of Plaintiff's treating psychiatrist, Dr. Clark; and (2) with reference to 20 C.F.R. § 416.927(e)(2)(i) (improperly cited in Plaintiff's brief as § 404.1530), the ALJ improperly considered Plaintiff's failure to take her prescribed medications. (Docket Entry 10 at 11-16.) As explained below, this Court concludes that the ALJ's decision to give less than controlling weight to Dr. Clark's opinion is supported by substantial evidence and was reached based upon a correct application of relevant law, and the ALJ was not improper in considering Plaintiff's failure to take her prescribed medications.

1. Dr. Clark's Opinion

Plaintiff states that, because "she is a specialist and has personally examined [Plaintiff] on many occasions since she began treating [Plaintiff] in July 2012," Dr. Clark's opinion should be accorded controlling weight. (*Id.* at 13.) The Commissioner typically affords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 416.927(c)(2); *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996) (if a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight"). A treating physician's opinion is not due controlling weight, however, when "it is not supported by clinical evidence or if it is inconsistent with other substantial evidence." *Craig*, 76 F.3d at 590. An ALJ refusing to accord

6

controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. 20 C.F.R. § 416.927(c)(1)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.*

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *Id.* § 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *accord Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. § 416.927(d).

Moreover, courts have generally found checklist opinions to be entitled to relatively little weight. *See McGlothlen v. Astrue*, No. 7:11-CV-148-RJ, 2012 WL 3647411, at *6 (E.D.N.C. Aug. 23, 2012) ("form reports are arguably entitled to little weight due to the lack of explanation"); *Halloran v. Barnhart*, 362 F.3d 28, 31-32, 31n.2 (2d Cir. 2004) (standardized form opinions are "only marginally useful" and not particularly "informative"); *Berrios Lopez v. Sec'y of Health & Human Servs.*, 951 F.2d 427, 431 (1st Cir. 1991) (checklist opinions disfavored);

7

*Frey v. Bowen*, 816 F. 2d 508, 515 (10th Cir. 1987) (checklist forms, "unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence"); *see also* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion . . . the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

Substantial evidence supports the ALJ's decision to accord Dr. Clark's opinion limited weight. The ALJ noted that Dr. Clark's opinion was in the form of a checklist-style questionnaire. (Tr. 33.) The ALJ also found inconsistencies between Dr. Clark's checklist form, her treatment notes, and Plaintiff's presentation at her hearing. The ALJ explained:

> To begin with, there was no clear evidence that Dr. Clark had four years of experience treating the claimant. As previously discussed, the claimant requested the switch from Dr. Russell to Dr. Clark in October 2012. More significantly, however, the opinions of Dr. Clark were inconsistent with the treatment record, including her own progress notes. These records confirm that the claimant was generally stable on medication, with intact memory, attention, concentration, thought processes, speech, fund of knowledge, and ability to interact. Moreover, the claimant's presentation at the hearing was not consistent with the degree of restriction averred by Dr. Clark.

(*Id.*) Indeed, as noted by the ALJ, Dr. Clark's progress notes in May 2013 indicate that Plaintiff, while "depressed" and "anxious," was still stable; had normal rate, volume, and articulation in her speech; had generally normal thought processes; was devoid of any violent ideations; and exhibited fair judgment and insight. (Tr. 460–62.) Treatment notes prior to May 2013 indicate good judgment and insight, euthymic and pleasant moods, exchange and interaction with family members, participation in community activities, and an ability to travel. (Tr. 466–68, 469–70, 476–83, 485, 489–90.) Several of these individual capacities were corroborated by Plaintiff's testimony during the May 22, 2013 ALJ hearing. (Tr. 64–68)

8

(Plaintiff maintains communication with mother and college friend several times a week; walks dog; visits church from time to time; goes grocery shopping; and cooks for herself.).

Other objective evidence in the record supported the ALJ's decision not to accord Dr. Clark's opinion great weight. Dr. Russell, Plaintiff's treating physician prior to Dr. Clark, reported that from August to December 2011, Plaintiff had generally normal, goal directed thoughts; good mood, affect, and judgment; was pleasant in mood and appearance; maintained good attention and focus; and cognition was within normal limits. (Tr. 426–39.) State agency consultants, after reviewing the record, opined that Plaintiff was capable of performing simple, routine, repetitive tasks in a low stress, non-production environment with limited social demands. (Tr. 83–108.) Additionally, Plaintiff's mother, in October 2011, reported that Plaintiff feeds and walks her dogs, bathes, fixes her own meals, shops for food, mows the lawn as needed, does laundry, reads, writes, uses email, and actively makes phone calls. (Tr. 205.)

This Court recognizes that the record is not entirely devoid of episodes of decomposition—in May 2012, for example, Plaintiff stopped her medications and was subsequently brought in for evaluation by a police officer who reported that Plaintiff had been at a restaurant for several days. (Tr. 494; 542-556; 585-592.) Plaintiff also reported stress prior to her disability hearing (Tr. 460); oversleeping and feeling sad after returning home from a visit to her mother in Chicago (Tr. 475); and a drop in mood and affect following the death of her father (Tr. 427–28). However, each of these episodes is attributable to either a significant life event or momentary failure to comply with her medicine regiment. Otherwise, the record from the relevant time period demonstrates that Plaintiff was mentally functional, sociable, and able to perform a wide range of activities. Consequently, the Court finds the

9

ALJ's treatment of Dr. Clark's opinion complied with the applicable regulations and was supported by substantial evidence.

Likewise, for the reasons stated above, Plaintiff's argument that state agency physicians were improperly given greater weight than Plaintiff's treating physician also fails. (*See* Docket Entry 10 at 16.) State agency physicians are "highly qualified . . . experts in Social Security disability evaluation," 20 C.F.R. § 416.927(e)(2)(i), and it is within the discretion of the ALJ to give greater weight to a non-treating state agency physician, particularly when the opinion of the non-treating physician is supported by substantial evidence or there is persuasive evidence contrary to the opinion of a treating physician. *Williams v. Astrue*, No. 3:11-CV-764-HEH, 2012 WL 5361032, at *13 (E.D. Va. Oct. 16, 2012) *report and recommendation adopted*, No. 3:11CV764-HEH, 2012 WL 5361014 (E.D. Va. Oct. 31, 2012) (finding that the ALJ did not err in giving greater weight to opinions of non-treating physicians when substantial evidence in the record supported the opinions); *Hunter*, 993 F.2d at 35 (finding that "the ALJ was within his discretion in giving [non-treating physician's] testimony greater weight . . . ."). Here, Dr. Cyr-McMillon and Dr. Grubbs' opinions, which opined claimant's functioning abilities, were generally consistent with the entire medical record. (Tr. 83-92; 103-06.) In making the ultimate determination as to Plaintiff's disability, the ALJ also considered the medical evidence submitted after the opinions of the state agency physicians were rendered, thus taking into account the entire medical record in his decision. (Tr. 31-34.) In light of substantial evidence supporting the opinions of the state agency physicians, the ALJ did not err in according great weight to Dr. Cyr-McMillan and Dr. Grubbs' opinions. Thus, Plaintiff's argument fails.

2. Failure to Take Prescribed Treatment

Plaintiff also asserts that consideration of her improved state following compliance with her prescribed medicine regiment is improper. To the contrary, she argues that her inconsistent compliance with said regiment is a symptom of her underlying disability. (Docket Entry 10 at 15-16.) To support her argument, Plaintiff references 20 C.F.R. § 416.930[5] which sets forth the need to follow prescribed treatment. *See* 20 C.F.R. § 416.930; *see also* SSR 82-59, 1982 WL 31384 (1982) ("An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment . . . cannot by virtue of such 'failure' be found to be under a disability."). If a claimant fails to follow a treatment plan "without a good reason[,]" she will not be found disabled. 20 C.F.R. § 416.930. However, this only applies if a claimant would otherwise be found disabled under the Act. *Smith v. Colvin*, No. 1:12CV1247, 2015 WL 3505201, at *5 n.7 (M.D.N.C. June 3, 2015) (finding that SSR 82–59 only applies when the ALJ has determined an individual "would be found disabled under the Act") (quotation and citation omitted). Here, the ALJ did not find Plaintiff disabled, nor did he deny benefits based on Plaintiff's failure to follow a prescribed course of treatment. Thus, the regulation is inapplicable here. *Hamby v. Colvin*, No. 1:12-CV-00395-GCM, 2014 WL 1874979, at *6 (W.D.N.C. May 9, 2014) (internal quotations and citations omitted) (finding that SSR 82–59 only applies when plaintiff's failure to follow the prescribed treatment is the "tipping point between a finding of disabled verses a finding of not disabled").

---

[5] Plaintiff inadvertently cites to 20 C.F.R. § 404.1530, which references prescribed treatment in disability insurance benefits cases under Title II.

11

## V. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Defendant's motion for judgment on the pleadings (Docket Entry 12) be **GRANTED**, Plaintiff's motion for judgment on the pleadings (Docket Entry 9) be **DENIED**, and that the final decision of the Commissioner be upheld.

*/s/ Joe L. Webster*
Joe L. Webster
United States Magistrate Judge

March 3, 2016
Durham, North Carolina